UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JARROD WAYNE HUFF,<br><br>    Plaintiff,<br><br>    v.<br><br>KILOLO KIJAKAZI, acting Commissioner of Social Security,<br><br>    Defendant. | No. 1:20-cv-00821-GSA<br><br>**ORDER DIRECTING ENTRY OF JUDGMENT IN FAVOR OF PLAINTIFF AND AGAINST DEFENDANT COMMISSIONER OF SOCIAL SECURITY**<br><br>**(Doc. 23, 29)** |

**I.**     **Introduction**

Plaintiff Jarrod Wayne Huff ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying his application for supplemental security income pursuant to Title XVI of the Social Security Act. The matter is before the Court on the parties' briefs which were submitted without oral argument to the Honorable Gary S. Austin, United States Magistrate Judge.[1] *See* Docs. 23, 29, 30. After reviewing the record the Court finds that substantial evidence and applicable law do not support the ALJ's decision. Plaintiff's appeal is therefore granted.

**II.**     **Factual and Procedural Background**[2]

On October 14, 2016 Plaintiff applied for benefits alleging disability as of October 14, 2012. AR 183–92. The Commissioner denied the applications initially on November 15, 2016 and upon reconsideration on June 14, 2017. AR 106–110; 117–122. Plaintiff requested a hearing which was held before an Administrative Law Judge (the "ALJ") on March 26, 2019. AR 32–64. On April 23, 2019 the ALJ issued a decision denying Plaintiff's application. AR 12–31. The Appeals

---

[1] The parties consented to the jurisdiction of the United States Magistrate Judge. *See* Docs. 9 and 10.

[2] The Court has reviewed the administrative record including the medical, opinion and testimonial evidence, about which the parties are well informed. Relevant portions thereof will be referenced in the course of the analysis below when relevant to the arguments raised by the parties.

1

Council denied review on April 7, 2020.  AR 1–6.  On June 11, 2020 Plaintiff filed a complaint in this Court.  Doc. 1.

### III. The Disability Standard

Pursuant to 42 U.S.C. §405(g), this court has the authority to review a decision by the Commissioner denying a claimant disability benefits.  "This court may set aside the Commissioner's denial of disability insurance benefits when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole."  *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999) (citations omitted).  Substantial evidence is evidence within the record that could lead a reasonable mind to accept a conclusion regarding disability status.  *See Richardson v. Perales*, 402 U.S. 389, 401 (1971).  It is more than a scintilla, but less than a preponderance.  *See Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996) (internal citation omitted).

When performing this analysis, the court must "consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence."  *Robbins v. Social Security Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (citations and quotations omitted).  If the evidence could reasonably support two conclusions, the court "may not substitute its judgment for that of the Commissioner" and must affirm the decision.  *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997) (citation omitted).  "[T]he court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination."  *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008).

> To qualify for benefits under the Social Security Act, a plaintiff must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. § 1382c(a)(3)(A).  An individual shall be considered to have a disability only if . . . his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. §1382c(a)(3)(B).

To achieve uniformity in the decision-making process, the Commissioner has established a

sequential five-step process for evaluating a claimant's alleged disability. 20 C.F.R. §§ 416.920(a)-(f). The ALJ proceeds through the steps and stops upon reaching a dispositive finding that the claimant is or is not disabled. 20 C.F.R. §§ 416.927, 416.929.

Specifically, the ALJ is required to determine: (1) whether a claimant engaged in substantial gainful activity during the period of alleged disability, (2) whether the claimant had medically determinable "severe impairments," (3) whether these impairments meet or are medically equivalent to one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1, (4) whether the claimant retained the residual functional capacity ("RFC") to perform past relevant work, and (5) whether the claimant had the ability to perform other jobs existing in significant numbers at the national and regional level. 20 C.F.R. § 416.920(a)-(f). While the Plaintiff bears the burden of proof at steps one through four, the burden shifts to the commissioner at step five to prove that Plaintiff can perform other work in the national economy given her RFC, age, education and work experience. *Garrison v. Colvin*, 759 F.3d 995, 1011 (9th Cir. 2014).

### IV. The ALJ's Decision

At step one the ALJ found that Plaintiff had not engaged in substantial gainful activity since his application date of October 14, 2016. AR 17. At step two the ALJ found that Plaintiff had the following severe impairments: degenerative disc disease of the lumbar spine status post laminectomy, obesity, hypertension, sleep apnea, depression and diabetes mellitus. AR 17. The ALJ also determined at step two that Plaintiff had the following non-severe impairments: herpes, generalized anxiety disorder, incontinence/neurogenic bladder, and varicose veins. AR 17–18. At step three the ALJ found that Plaintiff did not have an impairment or combination thereof that met or medically equaled the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 18.

Prior to step four, the ALJ evaluated Plaintiff's residual functional capacity (RFC) and concluded that Plaintiff had the RFC to perform light work as defined in 20 CFR 416.967(b) with limitations on postural activities, no exposure to unprotected heights or dangerous machinery, and a limitation to non-complex, simple and routine tasks. AR 19–24. At step four the ALJ concluded that Plaintiff had no past relevant work. AR 24. At step five, in reliance on the VE's testimony,

the ALJ concluded that Plaintiff could perform other jobs existing in significant numbers in the national economy at the light exertional level, namely garment bagger, electronics worker, and marker. AR 25–26.  Accordingly, the ALJ concluded that Plaintiff was not disabled at any time since his application date of October 14, 2016.  AR 26.

### V. Issues Presented

Plaintiff asserts two claims of error: 1) that the ALJ erred at step two in finding his neurogenic bladder was a non-severe impairment; and 2) that the ALJ erred in rejecting his testimony without clear and convincing reasons.

#### A. Step Two Non-Severity Finding

##### 1. Applicable Law

At step two of the five-step process, plaintiff has the burden to provide evidence of a medically determinable physical or mental impairment that is severe and that has lasted or can be expected to last for a continuous period of at least twelve months. *Ukolov v. Barnhart*, 420 F.3d 1002, 1004–05 (9th Cir. 2005) (*citing* 42 U.S.C. § 423(d)(1)(A)).  A medically determinable physical or mental impairment "must result from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques," and will not be found based solely on the claimant's statement of symptoms, a diagnosis or a medical opinion. 20 C.F.R. § 404.1521.

Step two is "a de minimis screening device [used] to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996). A "severe" impairment or combination of impairments is one that significantly limits physical or mental ability to do basic work activities. 20 C.F.R. § 404.1520. An impairment or combination of impairments should be found to be "non-severe" only when the evidence establishes merely a slight abnormality that has no more than a minimal effect on an individual's physical or mental ability to do basic work activities. *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005); 20 C.F.R. §§ 404.1522, 416.922. "Basic work

activities" mean the abilities and aptitudes necessary to do most jobs, including physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling, and mental functions such as the ability to understand, carry out, and remember simple instructions, deal with changes in a routine work setting, use judgment, and respond appropriately to supervisors, coworkers, and usual work situations. 20 C.F.R. § 404.1522, 416.922.

When reviewing an ALJ's findings at step two the Court "must determine whether the ALJ had substantial evidence to find that the medical evidence clearly established that [the claimant] did not have a medically severe impairment or combination of impairments." *Webb*, 433 F.3d at 687 (citing *Yuckert v. Bowen*, 841 F.2d 303, 306 (9th Cir. 1988) ("Despite the deference usually accorded to the Secretary's application of regulations, numerous appellate courts have imposed a narrow construction upon the severity regulation applied here.")).

### 2. Analysis

Here, the ALJ found Plaintiff's neurogenic bladder non-severe because there was "no evidence of functional limitations resulting from these conditions, and the claimant has not required any significant treatment for these conditions." AR 18. That finding is unsupported for the reasons explained below. Later on, in the RFC section, the ALJ also referenced that Plaintiff "had urinary incontinence for a while, but there is no objective evidence that it is neurogenic or related to spine issues." AR 23. It is not entirely clear whether the ALJ was summarizing a statement made by the state agency physician, Dr. Coleman, or making his own finding. In either case, that finding is also unsupported.

Plaintiff's physicians indicated in treatment records that he has bladder incontinence due to his spinal conditions. AR 311, 316, 330. In one instance the physician specifically stated, "urinary incontinence from stenosis." AR 330. Treatment notes dated May 11, 2015, indicate under "HPI" (history of present illness) that "Patient has a h/o kyphosis and scoliosis since age 17. Has had

multiple surgeries since . . . He is baseline bladder incontinence." AR 311. The mention of the bladder incontinence in the same line as the spinal surgeries also suggests a causal relationship may exist between the two. The same records subsequently list Plaintiff's various conditions and, under each, the plan of care. Under "#Neurogenic bladder. History of herniated disc s/p repair" it states "con't Detrol" (a urinary antispasmodic). AR 316. His history of herniated disc status post repair was listed in the same line as his neurogenic bladder, as if the two conditions go hand in hand. In sum, to the extent the ALJ found the bladder condition non-severe because there was no evidence it was related to his spinal conditions, the finding is unsupported. The evidence establishes a possible relationship to his spinal conditions.

The ALJ also concluded that there was no evidence of functional limitations attributable to Plaintiff's incontinence and that he had not required significant treatment for the same. Neither conclusion is supported. Urology treatment notes dated September 11, 2017, reflect that Plaintiff had urinary retention of 140ml post voiding, his dosage of Detrol was increased, and he was instructed to begin double voiding. AR 725. Relatedly, Plaintiff testified he has to use the bathroom multiple times per hour and occasionally has urinary accidents. AR 43–44. He reported the same to his physician. AR 520. The evidence of urinary frequency is significant and the ALJ's disregard of same cannot be dismissed as harmless error given the VE's testimony that an additional two unscheduled breaks of 15-minute duration would eliminate the available job base. AR 59.

Although the above-cited medical records do not specifically establish the need to use the restroom multiple times per hour, or that any such visit would be of 15-minute duration, the cited records do establish some functional limitations attributable to his urinary incontinence, namely a greater than normal need to use the restroom. Specifically, the records suggest that Plaintiff would require double the amount of bathroom breaks as someone with normal bladder function, or that the bathroom breaks would each take twice as long insofar as he was instructed by his urologist to

practice "double voiding."

Plaintiff also testified that he "sometimes" has urinary accidents which require him to get a change of clothes from his car. AR 44. He reported this to his physicians as well. AR 520. Although his testimony on that issue was uncontradicted, there would have to be more specific information in the record as to the frequency of these accidents to support a work-related limitation. The testimony was insufficiently concrete. It is not clear how the VE's expertise would be brought to bear on the question of what jobs would be available in the national economy for an individual with Plaintiff's RFC who might have an accident at work.

At a minimum, however, the physician-recommended double voiding practice and Plaintiff's associated testimony as to his abnormal urinary frequency is more than "a slight abnormality" with a "minimal effect on an individual's physical or mental ability to do basic work activities." *See Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005) (describing the nature of a non-severe impairment). Accordingly, the ALJ erred in finding the condition non-severe. *Id.* The ALJ should have acknowledged the relevant records and Plaintiff's related testimony, explained what specific work-related limitations he believed that evidence did or did not support, and included those limitations in his hypothetical to the VE at step five. *See Flores v. Shalala*, 49 F.3d 562, 570–571 (9th Cir. 1995) (an ALJ "may not reject significant probative evidence without explanation.") (quotations omitted).

Defendant's response brief spans about five pages, including two pages of substantive argumentation, and one paragraph directed at this issue. Defendant underscores that Plaintiff did not show up for his three month follow up as recommended by his urologist, nor had he called to reschedule as of January 2019. Resp. at 4-5. Defendant contends this undermines Plaintiff's contention that the impairment was severe. *Id.*

The argument is unpersuasive. Defendant mistakenly relies on *Chaudry* in which the Ninth

Circuit stated that *"*if a claimant complains about disabling pain but fails to seek treatment ,or fails to follow prescribed treatment, for the pain, an ALJ may use such failure as a basis for finding the complaint unjustified or exaggerated . . . " *Chaudhry v. Astrue*, 688 F.3d 661, 672 (9th Cir. 2012) (emphasis added). *Chaundry* is not applicable to this set of facts. First, the quote addresses the credibility of a claimant's complaints of "disabling pain." There is no contention here that Plaintiff's neurogenic bladder caused pain. Rather, it caused urinary frequency and incomplete urination.

Second, the ALJ did not use Plaintiff's failure to schedule a follow up appointment with urology as "a basis for finding the complaint unjustified or exaggerated." *Id.* The ALJ did not acknowledge the content of the pertinent urology records, nor did he note Plaintiff's lack of follow up. The Court is constrained to the ALJ's stated reasoning. *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003).

Third, Plaintiff did not fail to seek treatment, nor is there any evidence that he failed to take his Detrol and practice double voiding as directed by his urologist. He simply did not schedule his follow up appointment. Failing to schedule a follow up appointment is not logically akin to failing to follow a prescribed course of treatment, particularly where the physician has already recommended a fairly definitive course of treatment, namely taking the increased dose of Detrol and practicing double voiding.

Even if taking Detrol and practicing double voiding reasonably controlled Plaintiff's incontinence so as to preclude the need for additional follow ups, there is no reason to conclude based on Plaintiff's lack of follow up that his neurogenic bladder had somehow resolved and he began voiding completely without difficulty. There is no indication that the condition was curable, or that the urologist would have had any alternatives to recommend besides taking Detrol and practice double voiding. Irrespective of Plaintiff's lack of follow up, the urology records establish

his need to urinate more than normal. There is no reason to believe that additional follow up appointments would have resolved that issue. The unanswered question is what impact the additional restroom time would have on a hypothetical individual's ability to perform the jobs the VE identified at step five.

### B. Plaintiff's Subjective Symptomology

#### 1. Applicable Law

The ALJ is responsible for determining credibility,[3] resolving conflicts in medical testimony and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). A claimant's statements of pain or other symptoms are not conclusive evidence of a physical or mental impairment or disability. 42 U.S.C. § 423(d)(5)(A); Soc. Sec. Rul. 16-3p.

An ALJ performs a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible. *See Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014); *Smolen*, 80 F.3d at 1281; S.S.R 16-3p at 3. First, the claimant must produce objective medical evidence of an impairment that could reasonably be expected to produce some degree of the symptom or pain alleged. *Garrison*, 759 F.3d at 1014; *Smolen*, 80 F.3d at 1281–82. If the claimant satisfies the first step and there is no evidence of malingering, the ALJ must "evaluate the intensity and persistence of [the claimant's] symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities." S.S.R. 16-3p at 2.

An ALJ's evaluation of a claimant's testimony must be supported by specific, clear and convincing reasons. *Burrell v. Colvin*, 775 F.3d 1133, 1136 (9th Cir. 2014); *see also* S.S.R. 16-3p at *10. Subjective pain testimony "cannot be rejected on the sole ground that it is not fully

---

[3] Social Security Ruling 16-3p applies to disability applications heard by the agency on or after March 28, 2016. Ruling 16-3p eliminated the use of the term "credibility" to emphasize that subjective symptom evaluation is not "an examination of an individual's character" but an endeavor to "determine how symptoms limit ability to perform work-related activities." S.S.R. 16-3p at 1-2.

corroborated by objective medical evidence," but the medical evidence "is still a relevant factor in determining the severity of claimant's pain and its disabling effects." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); S.S.R. 16-3p (citing 20 C.F.R. § 404.1529(c)(2)).

The ALJ must examine the record as a whole, including objective medical evidence; the claimant's representations of the intensity, persistence and limiting effects of his symptoms; statements and other information from medical providers and other third parties; and any other relevant evidence included in the individual's administrative record. S.S.R. 16-3p at 5.

Before proceeding to step four, the ALJ must first determine the claimant's residual functional capacity. *Nowden v. Berryhill*, No. EDCV 17-00584-JEM, 2018 WL 1155971, at *2 (C.D. Cal. Mar. 2, 2018). The RFC is "the most [one] can still do despite [his or her] limitations" and represents an assessment "based on all the relevant evidence." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The RFC must consider all of the claimant's impairments, including those that are not severe. 20 C.F.R. §§ 416.920(e), 416.945(a)(2); Social Security Ruling ("SSR") 96–8p.

A determination of residual functional capacity is not a medical opinion, but a legal decision that is expressly reserved for the Commissioner. *See* 20 C.F.R. §§ 404.1527(d)(2) (RFC is not a medical opinion), 404.1546(c) (identifying the ALJ as responsible for determining RFC). "[I]t is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity." *Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001). In doing so, the ALJ must determine credibility, resolve conflicts in medical testimony and resolve evidentiary ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039–40 (9th Cir. 1995).

"In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record such as medical records, lay evidence and the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment." *Robbins,* 466 F.3d at 883. *See also* 20 C.F.R. § 404.1545(a)(3) (residual functional capacity determined based on all relevant medical

and other evidence). "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (quoting *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986)).

## 2. Analysis

Here, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms and found no malingering. AR 20. Thus, the ALJ was required to articulate clear and convincing reasons for rejecting Plaintiff's reported symptoms. *Laborin v. Berryhill*, 867 F.3d 1151, 1155 (9th Cir. 2017).

After summarizing Plaintiff's testimony and the medical evidence, the ALJ concluded that his "ability to do light housework, all personal needs, some shopping, easy-meal preparation, and drive, are inconsistent with the alleged presence of a condition that would preclude all work activity." AR 24. Plaintiff contends the reasoning was insufficiently clear and convincing as the ALJ did not bridge the gap in his reasoning and tie these activities to the testimony they purportedly undermined.

Defendant underscores the normal findings on physical examination. As noted above, however, the Court is limited to the reasoning the ALJ asserts and the ALJ did not rely on physical examination findings as a basis to reject Plaintiff's testimony. Rather, the ALJ relied on Plaintiff's daily activities as quoted above. In fact, the ALJ rejected the opinions of consultative examiner Dr. Siekerkotte and non-examining physician Dr. Coleman who opined that Plaintiff could perform medium work. AR 23. Those opinions identified the same physical examination findings Defendant underscores, namely normal strength, sensory function, reflexes, gait, transfers, balance, muscle bulk, and muscle tone. AR 22-23. He also could stand on his heels and toes and one leg. AR 22. Notwithstanding those examination findings, the ALJ nevertheless rejected the opinions

of Drs. Siekerkotte and Coleman as the former did not have access to the longitudinal record and the latter did not consider "the combination of the claimant's subjective complaints combined with the objective MRI findings." AR 24.

Indeed, Plaintiff's medical history included kyphoscoliosis fusion surgery, L5-S1 disc herniation and degeneration status post laminectomy, S1 nerve root impingement, severe central canal stenosis at L4-L5, and mild to moderate lateral recess stenosis at the same level. AR 20. The imaging findings and surgical history are more than adequate to corroborate allegations of daily sciatic pain level 7 or 8 out of 10, notwithstanding normal findings as to strength, reflexes, and sensory function. AR 323. Considering the surgical history and the "combination of claimant's subjective complaints with the objective MRI findings," the ALJ found that medium work was precluded and an RFC for light work was more appropriate. Thus, the ALJ's opinion reflects an intention to credit Plaintiff's subjective complaints in part. The ALJ ultimately assessed an RFC more restrictive than what Drs. Siekerkotte and Coleman opined, but not so restrictive as to preclude all work activity. But it remains unclear here how the ALJ struck that balance, or why.

Plaintiff did offer reasonably specific testimony that, if credited as true, would have warranted more restrictive limitations than the ALJ included, and that testimony was not undermined by his reported activities of daily living. Plaintiff could walk around old town Clovis and play pokemon go, but only walked a half block before needing to sit and rest. AR 43. Plaintiff could do dishes and vacuum, but only for 10 minutes before needing a 10-to-20-minute break to rest in his recliner with his feet up. AR 46. He had significant sciatic pain at a level 7 or 8 everyday despite using pain medication. AR 43. He could drive but required periodic breaks and a full day of rest following long distance driving. AR 45. He anticipated being in his recliner all day following the day of the hearing. *Id.* He prepared meals but they were limited to finger foods and microwaveables. AR 222.

There are no internal inconsistencies apparent in the testimony, and the testimony was sufficiently specific that, if credited as true, it would conflict with ALJ's assessed RFC for light work.  Light work requires standing and walking 6 hours in an 8-hour day, whereas Plaintiff testified he could do chores no longer than 10 minutes, and walk no further than half a block. S.S.R. 83-10;  AR 43-46.

In sum, notwithstanding the relatively normal clinical examinations findings as underscored by Defendant and the agency's consultative physicians, Plaintiff's spinal surgical history and MRI findings are reasonably consistent with his alleged pain levels and corresponding alleged limitations.  Indeed, the ALJ himself found that the longitudinal record, MRI findings, and subjective testimony warranted rejection of the physicians' opinions identifying an RFC for medium work.  The ALJ concluded that light work was more appropriate.  Here, it is not clear why the ALJ concluded that medium work was precluded but light work was permissible, nor is it clear what testimony the ALJ believe to be unsupported and why.  The ALJ's reasoning was neither clear nor convincing.

## VI.     Remand for Further Proceedings

The ALJ erred in dismissing Plaintiff's neurogenic bladder as non-severe at step two despite objective medical evidence and testimonial evidence of functional limitations attributable to the condition, namely increased need for bathroom breaks.  The ALJ further erred in dismissing Plaintiff's testimony as to his sciatic pain and corresponding standing and walking limitations as inconsistent with his activities of daily living.  Remand is therefore appropriate for the ALJ to specifically consider those limitations, determine  to what extent they are supported by the whole record, and include specific corresponding limitations in the hypotheticals to the VE as appropriate. *See Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) ("Generally when a court . . . reverses an administrative determination, the proper course, except in rare circumstances, is to remand to

the agency for additional investigation or explanation.").

### VII. Conclusion and Order

For the reasons stated above, the Court finds that substantial evidence and applicable law do not support the ALJ's conclusion that Plaintiff was not disabled. Accordingly, Plaintiff's appeal from the administrative decision of the Commissioner of Social Security is granted. The Clerk of Court is directed to enter judgment in favor of Plaintiff Jarrod Wayne Huff, and against Defendant Kilolo Kijakazi, acting Commissioner of Social Security.

IT IS SO ORDERED.

Dated: __February 9, 2022__                           __/s/ Gary S. Austin__
                                                                    UNITED STATES MAGISTRATE JUDGE